IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BEN FRY, | : | Case No. 1:15-cv-00157 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **MEMORANDUM OF DECISION** |
| | : | **ISSUED PURSUANT TO** |
| OFFICER RON ROBINSON, | : | **FED. R. CIV. P. 52(A)** |
| | : | |
| Defendant. | : | |

On March 5, 2015, Plaintiff Ben Fry initiated this civil action by filing a Complaint against Defendant Officer Ron Robinson, alleging wrongful arrest and malicious prosecution in violation of 42 U.S.C. § 1983. (Doc. 1 at PageID 3.) Robinson is sued in his individual capacity. (*Id.* at ¶ 3.) Fry amended his Complaint[1] once as a matter of course. (Doc. 3.) Defendant eventually filed a Motion for Summary Judgment, arguing he was entitled to qualified immunity. (Doc. 15.) This Court denied Defendant's Motion on May 6, 2016 (Doc. 25), prompting him to file an interlocutory appeal to the United States Court of Appeals for the Sixth Circuit. (Doc. 26.) On January 31, 2017, the Circuit affirmed this Court's denial of qualified immunity with respect to Plaintiff's wrongful arrest claim, but reversed concerning his malicious prosecution claim. (Doc. 27.) Its mandate followed on March 23, 2017. (Doc. 28.)

Plaintiff's claim of wrongful arrest was tried to this Court on July 11, 2017. (Doc. 35.) Defendant made an oral Motion pursuant to Fed. R. Civ. P. 52(c) at the close of Plaintiff's case. The Court declined to render judgment at that time. (*Id.*) Defendant renewed his Motion at the close of evidence, which the Court took under submission. (*Id.*) After due consideration, and in

[1] In Count Two of the initial Complaint, the surname "Siebert" appears instead of "Fry." (Doc. 1 at PageID 3.) Count Two of the Amended Complaint refers to Plaintiff with the correct surname. (Doc. 3 at PageID 3.)

accord with Fed. R. Civ. P. 52(a), the Court finds these facts specially and states its conclusions of law separately.

## I. FINDINGS OF FACT[2]

1. In the early months of 2012, and continuing through the summer, Plaintiff Ben Fry participated in several online chat rooms and dating websites, including Facebook, MyYearbook (which became MeetMe), Plenty of Fish, OkCupid, and Instagram. (Fry cross examination.)
2. He communicated with J.P., a minor female who used the fictional name "Ann Downer," on both Facebook and MyYearbook. (Fry cross examination.) Fry told Downer that he was 22 years old. (Defendant's Exh. A at p. 7.)
3. In the same time band, Defendant Officer Ron Robinson, then a Sergeant with the Goshen Township Police,[3] was conducting an undercover "sting" investigation with respect to internet importuning. (Robinson direct examination.)
4. Robinson met J.P., who was 14 years old, as well as her mother, at Cincinnati Children's Hospital after J.P. had run away from home and was found by police. J.P. previously had communicated with adult men on Facebook and had engaged in sexual conduct with some of them.[4] (Robinson direct examination.)
5. Robinson used J.P.'s Facebook account to "lure" back the adult males with whom she had communicated, which included Fry. (Robinson direct examination.)

[2] The parties submitted proposed findings of fact and conclusions of law in advance of trial. (Docs. 30, 31.) Simultaneous post-trial briefs also were filed on August 1, 2017. (Docs. 36, 37.) Neither party ordered a transcript of the proceedings. When a finding of fact relies on witness testimony, the Court will name the witness and indicate whether the testimony was elicited on direct examination or on cross examination.

[3] Robinson retired from the Department in March 2016. (Robinson direct examination.)

[4] There is no allegation that Fry ever engaged in sexual conduct with J.P.

6. Fry's first contact with Robinson, posing as Ann Downer, occurred on March 27, 2012. (Fry cross examination; Defendant's Exh. A at p. 1.)

7. No later than July 3, 2012, Fry was on notice that Downer was underage.[5]

8. On July 6, 2012, Robinson, posing as Ann Downer, contacted Fry. (Defendant's Exh. A at p. 14.) They discussed oral and vaginal sex, as well as "protection."[6]

---

[5] An excerpt of their online message exchange:

> **Ann Downer**
> u know i can't drive yet not like its that easy only 14 remember getting ready to be big 15 lol
> about 7 months and have temp permit oh ya
> when for u i don't see you answering
> **Ben Fry**
> oh
> **Ann Downer**
> oh what
> **Ben Fry**
> I thought u were 18.
> **Ann Downer**
> No u knew it when we talked last month or two ago ☹

(Defendant's Exh. A at pp. 12–13.)

[6] An excerpt of their online message exchange:

> **Ann Downer**
> i want you dont you want me or want to be in me lol
> ☺
> **Ben Fry**
> yes
> **Ann Downer**
> u bringing protection
> **Ben Fry**
> maybe
> **Ann Downer**
> please I want you and I need it you wont regret it
> plus my oral sex, you will love I promise
> **Ben Fry**
> why we need protection?
> **Ann Downer**
> cause i dont want pregnant and u dont want to be dady do you
> **Ben Fry**
> I can pull out or somethin
> **Ann Downer**
> ok so long as u pull out my mom is working tuesday night
> from 7p to 330 am if u wanna come over
> **Ben Fry**
> ok
> **Ben Fry**
> you going to call me then or what
> ?
> **Ann Downer**
> yes i will call you then i want u 4sure ☺

(Defendant's Exh. A at pp. 16–17.)

9. Two days later, on July 8, 2012, Fry messaged "Ann Downer" just after midnight. (Defendant's Exh. A at p. 19.) He admitted to being drunk at the time. (Fry cross examination.) Robinson responded shortly before 2:00 p.m. He asked if anyone had played with her "pussy" recently. They settled on a day and time to meet. (Defendant's Exh. A at p. 19.) As on July 6, they discussed vaginal sex.[7]

---

[7] An excerpt of their online message exchange:

> **Ann Downer**
> suppose to go out to eat with my dad though even though dont want to
> **Ben Fry**
> o ok
> anyone play with that pussy this weekend? ☺
> **Ben Fry**
> ?
> **Ann Downer**
> no y wish u did but u cant make time lol
> **Ben Fry**
> i have time
> your not home alone or anything though
> **Ann Downer**
> yes always home alone when moms at work told u that
> we could have a lot of sex ☺ happy times
> **Ben Fry**
> what day does she work next
> monday?
> **Ann Downer**
> tuesday night
> **Ben Fry**
> ok
> **Ann Downer**
> sound good u coming
> **Ben Fry**
> yea
> **Ann Downer**
> sweet
> . . . .
> **Ben Fry**
> o okayy
> when am i coming
> **Ann Downer**
> hopefully tuesday and hopefully cuming in me lol
> **Ben Fry**
> i mean when tuesday do you want me to come over?
> **Ann Downer**
> after 8pm
> **Ben Fry**
> kk
> why you say hopefully?
> something might come up?
> **Ann Downer**
> cause i dont want to be sttod up and i want my pussy rubbed on and pounded ☺
> wht will come up at night
> **Ben Fry**
> what you mean you don't want to be stood up?
> **Ann Downer**
> i didn't mean that i mean you not coming
> **Ben Fry**

10. On July 24, 2012, Robinson, posing as Ann Downer, texted Fry. In a brief exchange, Fry asked "her" to send to him a picture. (Defendant's Exh. A at p. 29.) Robinson texted Fry the next day—July 25, 2012—as well, and Fry repeated his request for "her" picture. (*Id.* at p. 30.) Later on the 25th, Robinson again texted Fry; Fry stated that he would not come over until he saw "her" on Skype. (*Id.* at p. 30–33.) On July 26, 2012, Robinson texted Fry, "you didnt answer i tried calling." (*Id.* at 33.) The next text message sent by Fry says, "Am I being charged with anything? If so I will just come in." (*Id.*)

11. In the wake of realizing that he had been communicating with someone other than "Ann Downer," Fry retained Steve Adams and Marguerite "Margie" Slagle as legal counsel. (Fry direct examination.)

12. On October 26, 2012, Robinson prepared a "Pre-Indictment Offense Report"—which he referred to as a "Rule 16"—and recommended to the Clermont County Prosecutor that Fry be charged with two counts of importuning, each a felony. (Robinson direct examination; Defendant's Exh. H-1 at pp. 1–5.)

---

ok
u got Skype?
. . . .
**Ben Fry**
k. well whats your address so i can look it up for tuesday
**Ann Downer**
1785 sr 28 goshen ohio 45122
**Ben Fry**
whats that?
mobile home?
**Ann Downer**
yes mobile home
**Ben Fry**
oh ic
well I'll come for sure. so don't make any other plans or nothin
**Ann Downer**
cool gotta go im wet already thinking about it ☺
**Ben Fry**
um ok

(Defendant's Exh. A at pp. 21–28.)

13. On February 19, 2013, Robinson received a letter by facsimile transmission from Assistant Prosecuting Attorney Kevin T. Miles with respect to his October 26, 2012 Report. (Robinson cross examination.) That letter stated:

> After reviewing the above referenced case, our office believes this case should be re-filed as a misdemeanor in Municipal Court. The felony case will be dismissed.
>
> - Re-file these cases in Municipal Court.

(Defendant's Exh. H-2.) Robinson did not follow up with Miles or anyone else in the Prosecutor's office upon receipt of the letter. (Robinson cross examination.)

14. In response to the letter from Miles, on March 5, 2013 Robinson filed two Complaints against Fry. Each Complaint was accompanied by an Affidavit and a Motion for Criminal Stalking Protection Order (SPO) pursuant to Ohio Rev. Code § 2903.213. (Defendant's Exhs. H-3 & H-4.)

15. Despite the instruction in Miles' letter, Robinson filed felony rather than misdemeanor charges against Fry. It was his presumption that the Prosecutor would decide whether to reduce the charges to misdemeanors at the preliminary hearing that eventually would be set. (Robinson cross examination.) In essence, Robinson engaged in a practice of overcharging Fry to assist in the plea bargaining process.

16. The first Complaint charges felony importuning on July 6, 2012. (Defendant's Exh. H-3 at p. 8.) The Affidavit attached to the Complaint cites the statute violated, Ohio Rev. Code § 2907.07(D)(2), and contains only one specific: "JLP 3-16-98." (*Id.* at p. 7.)

17. The second Complaint is identical to the first, except this charge of felony importuning references an offense date of July 8, 2012. (Defendant's Exh. H-4 at p. 11.) The

Affidavit attached to the second Complaint also cites the statute violated, Ohio Rev. Code § 2907.07(D)(2), and likewise contains only one specific: "JLP 3-16-98." (*Id.* at p. 12.)

18. Deputy Clerk S. Coyne issued an arrest warrant with respect to each Complaint. (Defendant's Exh. H-3 at p. 10; Defendant's Exh. H-4 at p. 14.) There is no evidence that she made an independent determination with respect to whether there was probable cause to issue these warrants.[8]

19. On March 9, 2014, a Fairfax, Ohio police officer arrested Fry after he exited a Walmart store because of the two outstanding warrants for felony importuning. (Fry direct examination; Defendant's Exh. H-5 at p. 16.)

20. The Fairfax officer handcuffed Fry and placed him in the back seat of the police cruiser. Fry's car was towed. The Fairfax officer drove to a gas station where a Clermont County police officer assumed custody of Fry. The Clermont County officer transported Fry to the Clermont County jail to be processed. Fry remained handcuffed. At the jail, Fry was placed in a cell and instructed to change his shirt. He was photographed and fingerprinted. In addition, he was swabbed to give a DNA sample. Once processed, Fry was released on an own recognizance ("OR") bond. In total, Fry was detained between one and two hours. He waited 20 to 30 minutes for a ride home. (Fry direct examination.)

21. Fry's case was scheduled for a preliminary hearing[9] three separate times. He requested that the first setting be continued. The second setting, at which Fry was represented by Attorney Slagle, was continued at the request of the Prosecutor because Robinson was

---

[8] Coyne did not testify at trial.

[9] At the Court's request, Plaintiff's counsel elicited testimony about Clermont County's procedure regarding felony prosecutions. Once charges are filed by a police officer such as Defendant Robinson, a preliminary hearing is scheduled in Municipal Court, where a judge decides whether there is probable cause to move forward. (Slagle direct examination.)

unavailable. At the third setting, on March 31, 2014, the State offered Fry the opportunity to plead guilty to a lesser charge of telephone harassment, a misdemeanor. Fry rejected this offer on the advice of counsel, which upset Robinson. The Prosecutor then dismissed the case.[10] (Fry direct examination; Slagle direct examination; Defendant's Exh. H-5 at p. 16.)

22. The next day, April 1, 2014, Robinson submitted another Pre-Indictment Offense Report, this time requesting that Fry be charged with *five* counts of felony importuning. Robinson referenced exchanges occurring on March 12, 2012, April 5, 2012, and July 2, 2012 in addition to those on July 6, 2012 and July 8, 2012 that he previously referenced in his October 26, 2012 Report. Robinson's April 1, 2014 Report does not state that the charges with respect to the exchanges on July 6, 2012 and July 8, 2012 were dismissed by the Prosecutor. (Defendant's Exhs. H-1 at pp. 1–5 and H-5 at pp. 15–20.)

23. No action was taken on Robinson's April 1, 2014 Report. (Robinson cross examination.)[11]

24. Fry was not Robinson's only target vis-à-vis J.P., but, rather, was part of a larger investigation. In all, Robinson filed affidavits in support of arrest warrants for 16 men. They were "identical" to the Complaints filed against Fry in that they cited the state felony importuning statute and contained only one specific: "JLP 3-16-98." This was Robinson's typical practice. (Robinson cross examination; Plaintiff's Exhs. 6i–6xvi.)

25. Robinson had no personal animus or malice toward Fry.

[10] Had Slagle known that Miles originally told Robinson to "dismiss" the felony case, she would have asked that the case be dismissed with prejudice. (Slagle direct examination.)

[11] The Court does not credit Robinson's nonsensical testimony that Prosecutor Miles instructed him to file the April 1, 2014 Report.

## II. CONCLUSIONS OF LAW

It is well established that arrests require probable cause. *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). A warrant application lacking sufficient indicia of probable cause, such that it is unreasonable to believe that probable cause was established, violates a person's right to be free from false arrest. *Messerschmidt v. Millender*, 565 U.S. 535, 547–48 (2012); *see Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

Ordinarily, a police officer is entitled to qualified immunity when he relies on a judicially-secured warrant. *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005). An officer applying for a warrant, however, still must "exercis[e] reasonable professional judgment" so as to "minimize" the "danger of an unlawful arrest." *Malley*, 475 U.S. at 345–46.

Review of whether a warrant was supported by sufficient indicia of probable cause is limited to "the four corners of the affidavit." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013). "Affidavits do not have to be perfect, nor do they have to provide every specific piece of information," *Hale*, 396 F.3d at 725, but they do require "particularized facts" that show veracity, reliability, and a basis of knowledge that goes "beyond bare conclusions and suppositions," *Rose*, 714 F.3d at 367. The deliberate or reckless omission of facts that are material to a probable cause determination is unconstitutional. *Wesley v. Campbell*, 779 F.3d 421, 428–29 (6th Cir. 2015); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

Ohio Revised Code § 2907.07 sets forth the elements necessary for a conviction for felony importuning. Fry was charged under § 2907.07(D)(2), which provides:

> (D) <u>No person shall solicit another</u> by means of a telecommunications device, as defined in section 2913.01 of the Revised Cod, <u>to engage in sexual activity</u> with the offender when the offender is eighteen years of age or older and either of the following applies:
> . . . .

> (2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age.

(Emphases added.) The term "solicit" is not defined within the statute, but it has been defined by case law. "[I]n a soliciting case, the crime is the asking." *State v. Swann*, 142 Ohio App. 3d 88, 90, 753 N.E.2d 984, 986 (2001). The term "sexual activity" means sexual conduct or sexual contact, or both. Ohio Rev. Code § 2907.01(C). The term "sexual conduct" includes vaginal intercourse between a male and female. *Id.* § 2907.01(A). The term "sexual contact" means any touching of an erogenous zone of another, including the genitals and pubic region. *Id.* § 2907.01(B).

Applying the relevant case law, the Court states the following conclusions of law:

1. Defendant Officer Ron Robinson was acting under color of state law at all times relevant to this civil action.
2. The Affidavits in support of the Complaints for felony importuning on July 6, 2012 and July 8, 2012 were bare bones. They excluded any specific details of Fry's conduct and the basis for Robinson's knowledge of the alleged offenses. No facts regarding solicitation by Fry to Robinson for sexual activity were included. No facts regarding Robinson posing as a 13-to-16-year-old minor were included. No facts regarding Fry believing that he was communicating with a 13-to-16-year-old were included. No facts regarding Fry's age—namely, that he was four or more years older than the age Robinson assumed in posing as a 13-to-16-year-old—were included. The Affidavits did include an ambiguous set of initials and a date of birth, but with no indication that these facts were

intended to communicate the basis for Robinson's knowledge of the alleged offenses. Providing the statutory language of the charged offense without identifying the affiant's basis of knowledge does not show probable cause. *Sampson v. City of Xenia*, 108 F. Supp. 2d 821, 837 (S.D. Ohio 1999).

3. The Affidavits in support of the Complaints for felony importuning on July 6, 2012 and July 8, 2012 failed to include the fact that the Prosecutor had directed Robinson to "dismiss" the felony charges and refile them as misdemeanors. Officers violate clearly established law when they make material omissions that are "deliberate . . . or show[ ] reckless disregard for the truth." *Wesley v. Campbell*, 779 F.3d 421, 428–29 (6th Cir. 2015) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006).) Including this fact in the Affidavits, *see Sykes*, 625 F.3d at 305, obviously would militate against a finding of probable cause.

4. The warrants issued for Fry for felony importuning on July 6, 2012 and July 8, 2012 lacked probable cause; hence, Fry's arrest based on these warrants violated his Fourth Amendment right to be free from unlawful seizure.

5. Robinson is not entitled to immunity from suit because the warrants were judicially approved. Acting as simply a rubber stamp, Deputy Clerk Coyne did not make a probable cause determination. Nor could she, given the lack of particularized facts within the Affidavits in support of the Complaints. *See Garmon v. Lumpkin Co., Ga.*, 878 F.2d 1406, 1408–09 (11th Cir. 1989).

6. Robinson also is not entitled to immunity from suit because a reasonably well-trained police officer in his position would have known that the Affidavits in support "failed to establish probable cause and that he should not have applied for the warrant." *Malley*,

475 U.S. at 345. Officers who are "plainly incompetent or those who knowingly violate the law" are not entitled to immunity. *Johnson v. Mosely*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

## III. AWARD

The Court finds in favor of Plaintiff Ben Fry and against Defendant Officer Ron Robinson with respect to Fry's wrongful arrest claim brought pursuant to 42 U.S.C. § 1983. Defendant is liable to Plaintiff for the following compensatory damages:

> The costs associated with Plaintiff's vehicle being towed when he was arrested in March 2014; and
>
> The fees Plaintiff paid to attorneys Steve Adams and/or Margie Slagle to defend against the felony importuning charges and to later expunge/seal the record of his arrest, as well as any court costs or filing fees paid in connection therewith.

No punitive damages, however, will be awarded. Punitive damages are appropriate in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "The purpose of punitive damages is to punish the defendant for his willful and malicious conduct *and* to deter others from similar behavior." *Id.* at 217 (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986) (emphasis added)). There is insufficient evidence that Robinson's actions toward Fry were motivated by "evil motive or intent" or were "recklessly or callously" indifferent to his Fourth Amendment rights. Fry fell within a larger undercover "sting" operation that Robinson was conducting with respect to internet importuning. Robinson credibly testified that he bore no personal animus or malice toward Fry.

**IT IS SO ORDERED**.

S/Susan J. Dlott________________
Judge Susan J. Dlott
United States District Court